## UNITED STATES v. MILLER.

Circuit Court of Appeals, Eighth Circuit.
October 13, 1928.

No. 8026.

E. O. Patterson, Solicitor of Interior Department, and E. T. Burke, Attorney of Department of Justice, both of Washington, D. C. (B. M. Parmenter, Asst. Atty. Gen., on the brief), for the United States.

Allen McReynolds, of Carthage, Mo. (John Thornberry, of Joplin, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and SYMES and MARTINEAU, District Judges.

KENYON, Circuit Judge. In the year 1915 one Gillihan, who had made a homestead entry upon certain government land in the state of Arkansas, cut and sold timber therefrom to one Montgomery, who in turn sold the same to defendant in error. Gillihan's homestead entry never was perfected. This suit was brought to recover the value of the timber. Demurrer was filed to the petition on the ground that the same showed the cause of action arose in 1916 in the state of Arkansas, that this case was not commenced until July, 1925, and was therefore barred by the statutes of limitation of Arkansas as well as Missouri, where the case was brought. The trial court sustained the demurrer and entered judgment in favor of defendant in error. The government brings this writ.

■ That the government had the right to bring the action to recover the value of the timber cut and carried away from its public lands cannot be questioned. The homestead entry never having been perfected, no patent had been issued, and the timber remained the property of the United States. United States v. Gardner (C. C. A.) 133 F. 285; United States v. Cook, 19 Wall. 591, 22 L. Ed. 210;

Shiver v. United States, 159 U. S. 491, 16 S. Ct. 54, 40 L. Ed. 231; Stone v. United States, 167 U. S. 178, 17 S. Ct. 778, 42 L. Ed. 127.

The only proposition here involved is whether the statutes of limitation of Arkansas, where the cause of action arose, or of Missouri, where suit was brought, apply to the government's case. If so, the decision of the trial court was correct.

■ Can the government of the United States, under the facts disclosed by the petition, recover, unhampered by statutes of limitation of a state, for timber unlawfully taken from the public domain? While the government of the United States is one of delegated and limited power, and the rights not granted to the government are reserved to the states, yet within the sphere of that delegated power the government of the United States is clothed with all attributes of sovereignty, except as limited by the Constitution. It is supreme in the exercise thereof, and cannot be hampered, impeded, or defeated by state legislation. In the noted case of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, Chief Justice Marshall, the most profound interpreter of the Constitution this country has ever known, pointed out that the people in forming this government had no intention of making the national government dependent on the states. While embarrassing and grave difficulties have arisen as a result of our dual system of government, it is happily true, as once said by that same great Justice, referring to the federal government: "Its powers are unquestionably limited; but while within those limits, it is a perfect government as any other, having all the faculties and properties belonging to a government, with a perfect right to use them freely, in order to accomplish the object of its institution."

■ So it is that the United States, in asserting governmental rights vested in it as a sovereign, is not bound by statutes of limitation of a state, unless the Congress has clearly manifested that intention. In Davis v. Corona Coal Co., 265 U. S. 219, 222, 44 S. Ct. 552, 553 (68 L. Ed. 987), it is said: "Also it is established that a state statute of limitations cannot bar the United States, at least when a suit is brought in the United States courts." In Chesapeake & Del. Canal Co. v. United States, 250 U. S. 123, 125, 39 S. Ct. 407, 408, (63 L. Ed. 889), "It is settled beyond controversy that the United States, when asserting 'sovereign' or governmental rights, is not subject to either state statutes of limitation or to laches." In United States v. Beebe, 127 U. S. 338, 344, 8 S. Ct. 1083, 1086 (32 L. Ed.

121): "The principle that the United States are not bound by any statute of limitations, nor barred by any laches of their officers, however gross, in a suit brought by them as a sovereign government to enforce a public right, or to assert a public interest, is established past all controversy or doubt." In United States v. Thompson, 98 U. S. 486, 490 (25 L. Ed. 194): "If the states can pass statutes of limitation binding upon the federal government, they can by like means make it suable within their respective jurisdictions. The evils of such a state of things are too obvious to require remark." In United States v. Norris, 222 F. 14, 18, this court said: "The state statute of limitations does not, of course, bar suits of the United States brought in their own courts in their sovereign capacity to assert a public interest or to enforce a public right." The Falcon (D. C.) 19 F.(2d) 1009; United States v. Seaboard Air Line Ry. Co. (C. C. A.) 22 F.(2d) 113; United States v. Harpootlian (C. C. A.) 24 F.(2d) 646; United States v. Nashville & C. Ry. Co., 118 U. S. 120, 6 S. Ct. 1006, 30 L. Ed. 81; United States v. Insley, 130 U. S. 263, 9 S. Ct. 485, 32 L. Ed. 968; Redfield v. Parks, 132 U. S. 239, 10 S. Ct. 83, 33 L. Ed. 327; United States v. Whited & Wheless Ltd. et al., 246 U. S. 552, 38 S. Ct. 367, 62 L. Ed. 879; United States v. Minnesota, 270 U. S. 181, 46 S. Ct. 298, 70 L. Ed. 539.

■ Defendant in error's theory is that, as there is no statute of the United States authorizing the procedure here brought, the government is enforcing a mere property right given to it by the laws of Arkansas; that it is not acting in any sovereign capacity, and therefore the statute of limitations of Arkansas applies and bars the action. The reliance of defendant in error is a decision of this court. Denver & R. G. R. Co. v. United States, 241 F. 614. The trial court based its conclusion upon that decision, holding there was no difference in principle between the two cases. That leads us to a consideration of that case.

The action there was brought by the government, under an act passed by the Legislature of Colorado, which rendered railroad companies liable for damages resulting from fires set by them, regardless of any question of negligence, to recover for damage to timber on land owned by it caused by a fire set by the railroad company. The Supreme Court of Colorado in originally passing on this statute held that the remedy created was not exclusive. Smith v. Denver & R. G. R. Co., 54 Colo. 288, 130 P. 1009. In a later decision, Rhinehart et al. v. Denver & R. G. R. Co., 61

Colo. 369, 158 P. 149, it held that the action created by the statute was exclusive and superseded the common-law right of action. The Colorado act, in creating the right to sue and recover, regardless of negligence, imposed a condition that the suit must be brought within two years.

This court held in Denver & R. G. R. Co. v. United States, supra, that the statute of Colorado imposing an absolute liability created a cause of action which did not exist at common law, and that the provision that suit must be brought within two years acted as a limitation of the liability, and pointed out that this differed from ordinary statutes of limitation which affect the remedy · alone; that, there being no legislation by Congress providing for the right of action, the plaintiff could recover only by virtue of some statute or under the common law as adopted by the particular state, and based its decision holding the statute of limitation applicable on the theory that, as the government brought its action under the statute, it was bound by the limitations thereof. As the Supreme Court of Colorado had held that the statutory remedy was exclusive; that theory would, of course, be followed by this court, and the United States, seeking to recover for a loss under that statute, would be confined to the right given thereby. But that is not holding that the limitation provided in the act was the same as a general statute of limitations, which is concerned only with a remedy to enforce a right—not with the creation of one.

This court said in Denver & R. G. R. Co. v. United States, supra (241 F. 617): "The statute provides that suit must be brought within two years, and we think a failure to bring the suit within the time prescribed by the statute acts as a limitation of the liability itself, and in this respect differs from the ordinary statutes of limitation which affect the remedy only." Also (page 618): "The time fixed by the statute within which an action may be brought is a condition of the right to sue at all, and a complaint which fails to state that the action was brought within that time fails to state a cause of action and is subject to demurrer." This is in line with practically all decisions on the question.

The Supreme Court of the United States, in Davis v. Mills, 194 U. S. 451, 454, 24 S. Ct. 692, 693 (48 L. Ed. 1067), said: "But in cases where it has been possible to escape from that qualification by a reasonable distinction courts have been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liabili-

ty wherever he is sued. The common case is where a statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. The Harrisburg, 119 U. S. 199 [7 S. Ct. 140, 30 L. Ed. 358]. But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere."

In Partee v. St. Louis & S. F. R. Co., 204 F. 970, 51 L. R. A. (N. S.) 721, Judge Sanborn, speaking for this court, said: "A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. Such a statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by· a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability."

In Dolenty v. Broadwater County, 45 Mont. 261, 267, 122 P. 919, 922, it is said: "The rule is well settled in this country that whenever a statute grants a right which did not exist at common law, and prescribes the time within which the right must be exercised, the limitation thus imposed does not affect the remedy merely, but is of the essence of the right itself, and one who seeks to enforce such right must show affirmatively that he has brought his action within the time fixed by the statute; and if he fails ·in this regard he fails to disclose any right to relief under the statute." See, also, Theroux v. Northern Pac. R. Co. (C. C. A.) 64 F. 84; Texas Portland Cement Co. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893.

Vital points of difference exist between this case and the Denver & R. G. R. Company Case. That case arose, as we have pointed out, under a special statute creating a special action, in which a limitation of time to sue was a part of the right created. This action is not brought under any such statute. It is brought under the common law, adopted as part of the law of Arkansas, and that fixes no limitation of time to bring action as a condition to the right itself. In the Denver & R. G. R. Company Case this court was not deal-

ing with the applicability of a general statute of limitations to an action brought by the government to recover under the common law of a state for the despoiling of a portion of the public domain.

We are satisfied that this court did not hold in that case that the proviso in the act creating the right was purely a statute of limitations as the term is understood and used in the law, viz. a restriction upon the period within which rights may be asserted. Certainly, if the Congress of the United States had passed an act authorizing such a suit as this to recover for taking timber from the public domain under the circumstances here presented, as it has in relation to cutting timber from certain of the public lands, a general statute of limitations of a state could not bar the action. There being no statute covering the situation, the government pursued the remedy afforded by the common law of the state in bringing its action, and if it was thereby asserting a general right incident to sovereignty, and pursuing the same in its own behalf, it did not surrender or waive its sovereignty, so as to make it subject to the general statutes of limitation of a state.

This leads to the really vital question in this case, to wit: Was the government, in bringing this suit, attempting to exercise a sovereign right, or is it to be regarded the same as an individual owner of property in the state of Arkansas, suing in Missouri to recover for timber taken, and limited in its rights and remedies the same as such private owner would be. The trial court held the suit was for a private right, and therefore that the statute of limitations would apply. We quote from its memorandum opinion: "The only inquiry is to determine whether the proceeding is for a public and sovereign right or whether it is for its private, as distinguished from its public rights."

Defendant in error bases its argument, also, as to this question, upon the language of the opinion in Denver & R. G. R. Co. v. United States, supra, and claims that the government, in proceeding under the common law of the state, stands in the same position as to rights and remedies as any other landowner. The following language of this court in that case, speaking of the government's suit, is seized upon as sustaining this position: "It cannot, therefore, be maintained, unless the fact that the government is the plaintiff relieves it from limitation fixed by the statute. * * * Its rights and remedies in relation to its property are usually such as apply to other landowners within the state where the action is brought and it is to be

treated like other persons owning lands therein and subject to local laws."

This language disassociated from the remainder of the opinion gives some basis to defendant in error's argument. However, we do not think this language is intended to lay down any general rule applicable to every case, but is used in connection with the particular facts of the case under consideration; nor do we think it subject to the construction given it by defendant in error. It is true that generally, in the absence of federal statutes giving a particular right or remedy, or both, the United States has only such rights and remedies as are open under the local laws, and there are many cases holding that where the United States comes into court asserting a mere property right it occupies the same position as any other suitor and its rights and remedies are the same as those of any other person "owning lands therein and subject to local laws." However, there is some qualification to that doctrine. It is apparent that the government may assert a property right, not as an exercise of its sovereignty, but the same as a private individual would. It may own land not used in or connected with the exercise of its sovereignty, or it may own land entirely in the public interest in pursuance of a great public policy. Clearly there may be a difference in the purposes of ownership. The United States government holds certain of its public lands, not merely for sale, but for homesteading and pre-emption. This in furtherance of a sound public policy to develop rural home ownership and stimulate utilization of such lands.

There has been great development of the interior and western parts of this country by the pioneers, who homesteaded and pre-empted wild land and converted it into productive property. This public land has been held in trust by the government for the benefit of the people of the United States. There is no element of profit to the government, or of the government engaging in business in relation thereto. It has been sold for nominal sums to actual settlers for the purposes above referred to. There is no similarity between this and the ordinary holding of lands by private individuals, or the holding of lands by the government merely for sale. The obligation is upon the government as a sovereign to protect and preserve these properties in the public interest. If these lands were not held in trust to carry out a great national policy, but simply for sale, a different question would arise. This distinction is recognized in Weber v. Harbor Commissioners, 18 Wall. 57, 68 (21 L. Ed. 798), where the Supreme

Court said: "Where lands are held by the state simply for sale or other disposition, and not as sovereign in trust for the public, there is some reason in requiring the assertion of her rights within a limited period, when any portion of such lands is intruded upon, or occupied without her permission, and the policy of the statute would be carried out by restricting its application to such cases."

The language of other Supreme Court cases is to be noted:

Utah Power & Light Co. v. United States, 243 U. S. 389, 409, 37 S. Ct. 387, 391 (61 L. Ed. 791): "A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it."

Causey v. United States, 240 U. S. 399, 402, 36 S. Ct. 365, 367 (60 L. Ed. 711): "The government in disposing of its public lands does not assume the attitude of a mere seller of real estate at its market value. These lands are held in trust for all the people, and in providing for their disposal Congress has sought to advance the interest of the whole country by opening them to entry in comparatively small tracts under restrictions designed to accomplish their settlement, development and utilization."

United States v. American Bell Telephone Co., 159 U. S. 548, 554, 16 S. Ct. 69, 72 (40 L. Ed. 255): "In instituting this suit, the government appeared on behalf of the public, and, as it were, in the exercise of the beneficent function of superintending authority over the public interests, and the rule of construction in such cases is properly regarded as affected by considerations of public policy. It is upon the principle of public policy that the United States have been held not bound by statutes of limitation unless Congress has clearly manifested that they should be so bound."

Camfield v. United States, 167 U. S. 518, 525, 17 S. Ct. 864, 867 (42 L. Ed. 260): "We do not think the admission of a territory as a state deprives it of the power of legislating for the protection of the public lands, * * * so long as such power is directed solely to its own protection. A different rule would place the public domain of the United States completely at the mercy of state legislation."

United States v. Devereux et al. (C. C. A.) 90 F. 182; United States v. Insley, 130 U. S. 263, 9 S. Ct. 485, 32 L. Ed. 968.

A different situation as to the applicability of statutes of limitation is presented when the government is merely a nominal party, bringing action for the benefit of a third party, United States v. Fletcher et al. (C. C. A.) 242 F. 818; Curtner v. United States, 149 U. S. 662, 13 S. Ct. 985, 37 L. Ed. 890; United States v. New Orleans Pac. Ry. Co., 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388; or when the United States steps down from its plane of sovereignty and enters the domain of business and commerce, such as operating merchant vessels by a Shipping Board, or running railroads, or going into the insurance business. When this is done, it may well be claimed that it has abandoned its sovereignty and submitted itself to the same laws that govern individuals engaged in that business. Gould Coupler Co. v. U. S. Shipping Board E. F. Corp. (D. C.) 261 F. 716; The No. 34 (D. C.) 11 F.(2d) 287; The Falcon (D. C.) 19 F.(2d) 1009; Standard Oil Co. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519.

In Chesapeake & Del. Canal Co. v. United States, supra, the government as a stockholder in a canal company brought suit for dividends. The claim was made there that the government was engaged in business and was not acting in its sovereign capacity. The lower court, in 223 F. 926, L. R. A. 1916B, 734, had held that such action could not be barred by state statutes of limitations, and the Supreme Court sustained that position, pointing out that these dividends were public money and that the government in collecting them was acting in its governmental capacity as much as if it were collecting taxes.

The timber involved in the present case was a part of the public land prior to severance. The severance was unlawful. The government, in attempting to recover the value of the timber converted, is endeavoring to collect money belonging to the public, just as much as it was in collecting the money due it as dividends upon stock held by it in a canal company, as discussed by the Supreme Court in Chesapeake & Del. Canal Co. v. United States, supra. We see no difference in the principle. The federal statutes provide for covering into the Treasury of the United States moneys collected for depredations upon the public land. U. S. Code Anno. title 16, § 601.

We are unwilling to hold that the government of the United States, in the protection of its public domain held in trust for the people of the United States and acting solely in the public interest, is engaged merely in enforcing a private right and not acting in its capacity as a sovereign. We do not think

the contrary doctrine can be drawn from Denver & R. G. R. Co. v. United States, supra. If it can, we would not be willing to follow it.

This suit is not, in our judgment, one merely to enforce a private right on the part of the government holding property as other persons, but is one brought by the government in pursuance of the trust reposed in it as a sovereign to preserve and protect the public domain for the people of the United States. The right asserted is solely in the public interest, is an attribute of governmental sovereignty, and cannot be defeated by the general statutes of limitation of a state. We conclude that the learned trial court erred in sustaining the demurrer. The judgment entered is reversed, and the case remanded, for further proceedings in harmony with this opinion.

Reversed and remanded.